COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
HUMACAO SUPERIOR PART

| | |
|---|---|
| ELIZABETH ROSARIO AMARO | CIVIL NO: |
| Petitioner | RE: |
| vs. | PETITION FOR ORDER |
| AGORI INC. | |
| Respondent | |

PETITION FOR PERMANENT INJUNCTION ORDER
(*Does not include Preliminary Injunction Request*)

TO THE HONORABLE COURT:

Comes now the petitioner, Elizabeth Rosario Amaro, (hereinafter, "Petitioner"), through the undersigned counsel, and requests a permanent injunction pursuant to 42 U.S.C. §12188 due to the noncompliance of Agori, Inc. d/b/a Supermercado Econo- Naguabo (hereinafter, "Respondent" with the provisions of Title III of the federal law known as the American with Disabilities Act, 42 U.S.C. § 12181 et seq. (hereinafter we refer to the federal statute as "ADA").

[1]

THE PLACE OF PUBLIC ACCOMMODATION IN QUESTION

1.     This is an action that seeks to remedy the illegal discrimination in a place of established and known public accommodation[2] in the following place mentioned:

---

[1] Title III of ADA regulates all private entities and commercial facilities that provide services to the public. The obligation imposed by Title III consists in not discriminating in the offering of such services to the persons with disabilities in the equal and full enjoyment of the goods, services and facilities, privileges, advantages, or accommodations in any place of public accommodation. The official link of the government of the United States with information about Title II/III of ADA is http://www.ada.gov/

[2] The term "public accommodation" or place of public accommodation, 42 U.S.C. 12181(7), is defined as private entities which operations affect commerce and specifically the following places are mentioned as a way to exemplify

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**AGORI, INC.**

d/b/a Supermercado Econo-Naguabo
Road #31 Km. 3.3 Int. Juan R. Garzot Street, 00718, Puerto Rico
Cadaster: 256-003-067-02-000
Parcel: 256-003-067-02
Coordinates (18.21451345871444, -65.73558177480457)

(hereinafter, we refer to this place as "the Property" or the "place of public accommodation"

## NEED FOR THE ACTION

2.      This permanent injunction Petition is necessary due to the following:

a)  The Respondent did not seek to eliminate architectural barriers despite that this was requested extra judicially and with the intervention of the Defender of Disabled Persons, who made a site visit and provided guidance as a courtesy to the Respondent. [3]

b)  The Respondent has architectural barriers in the place of public accommodation in violation of the ADA and the Accessible Design Guidelines promulgated by the Justice Department of the United States, which can be accessed at the following official link:

https://www.ada.gov/2010ADAstandards_index.htm

c)  The Petitioner visited the place of public accommodation and personally found the

---

what a place of public accommodation is: hotels, motels, lodgings, restaurants, bars, other establishments that serve food or drinks, movie theaters, theaters, concert and presentation halls, stadiums, places for exhibitions or entertainment, auditoriums, convention centers, presentation rooms, places of congregation, bakeries, food stores, clothing stores, tool stores, shopping malls, other sales or rent establishments, laundromats, drycleaners, banks, barber shops, beauty salons, travel agencies, shoe repair services, funeral homes, gas stations, accountant or attorney's office, pharmacies, insurance offices, health professionals offices, hospitals, other services establishments, a terminal or station used for public transportation, museums, libraries, galleries, other places with public exhibitions or collections, parks, zoos, theme parks and other recreation places, nurseries, elementary schools, high schools, universities or post graduate private schools or any other place that provides education, child care centers, nursing homes, homeless shelters, places that provide food, adoption agencies or any other establishment where social services are provided, gyms, health spas, bowling alleys, golf places and other exercise and recreation places. http://www.law.cornell.edu/uscode/text/42/12181.

[3] Such extrajudicial or administrative action is not a requirement to file this action, but we highlight that in this case it was done.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

architectural barriers there related to her disability.

d)   The Petitioner is (i) in imminent risk of finding the architectural barriers or (ii) it would be futile to return to the place of public accommodation at this time as it would constitute a personal safety risk for Petitioner, or it would be the same as submitting to an unpleasant, humiliating, and discriminatory situation.

e)   The petitioner has the current intention of enjoying the goods, privileges, services that are available in the place of public accommodation once the architectural barriers are totally removed. However, the Petitioner reserves the right to return to the place of public accommodation at any time before the architectural barriers are removed, even if that entails submitting to dangerous or discriminatory conditions, in order to seek, identify and report discrimination.

THE PETITIONER

3.      The Petitioner is Mrs. Elizabeth Rosario Amaro. Her mailing and physical address is: 58 TROPICAL BEACH, HUMACAO, PR 00718. Her telephone number is (939) 366-5383. Her fax number is: she does not have one.

4.      The Petitioner is a person that suffers a physical or mental disability that substantially limits several of her main daily activities. The medical conditions of Petitioner include epilepsy, asthma, vertebrae problems in the back. The Petitioner also has ample medical history for these conditions, receives social security for disability and has special disability signs issued by the Department of Transportation and Public Works. The Petitioner has and frequently uses a cane and walker.

5.      The referenced medical conditions substantially limit the Plaintiff (in comparison to most of the population) in several daily main or everyday activities, such as: walking, standing,

lifting objects, bending, working and others that encyclopedias, dictionaries, and authoritative medical treatises have related to the above-mentioned disabilities or conditions. The Petitioner has a disability, as defined by the ADA. 42 U.S.C. § 12012(1)(A).

6.      As stated, the Department of Transportation and Government Works of Puerto Rico (DTOP, for its Spanish acronym) has issued for the benefit of the Petitioner a removable disabled person sign, so that Petitioner can use the sign to park in parking spaces identified as accessible or "for disabled persons". The removable sign does not have to be used in a specific vehicle or in a motor vehicle registered to the name of the Petitioner. The Petitioner has the right to use the removable sign issued by DTOP in any vehicle, whether hers, of a family member, a friend, or a vehicle she has incidentally boarded. The Petitioner has the legal right to use the parking spaces labeled as accessible or "for disabled persons" in this jurisdiction regardless of the motor vehicle that she is in.

## RESPONDENT

7.      Respondent is composed by the following persons or entities; Agori, Inc., that is a legal entity that is the owner, landlord, tenant, or operator of the Property identified in the first paragraph of the complaint; and Fulanos de Tal 1-100, who are the unknown persons or entities that are owners, landlords, tenants, or operators of the Property that is identified in the first paragraph of the Complaint. As the identity of them is unknown at this time, the Petition shall be amended to join them to this civil proceeding. In this Petition, the term "Respondent" also includes all the unknown respondents identified with the fictitious name "Fulano de Tal 1-100".

## JURISDICTION AND VENUE

9.      If this civil proceeding is removed to the Court for the District of the United States, subject matter jurisdiction is invoked pursuant to 28 U.S.C. §§1331 and 1343 (a)(3) and (a)(4) for

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

violations to ADA.

10.    The Court of First Instance has original jurisdiction to resolve controversies arising pursuant to Title III of the American with Disabilities Act, 42 U.S.C. §12181 et seq.

11.    This civil action has been filed with the court that has venue as the Property in question is in this judicial region.

<u>FACTS</u>

12.     The property is a place of public accommodation as defined by the ADA, 42 U.S.C. 12181(7) and is a space open to the public and which operation affects commerce. The Property is not residential, is not a private club or a church.

13.    The Petitioner is a resident in Puerto Rico and lives very close to the Property by car.

14.    The Petitioner visited the Property around October 15, 2020, among others, and found barriers that interfered with the ability of the Petitioner to use and enjoy the goods, services, privileges, and accommodations offered in the Property.

15.    Also, regardless of what is stated above about the date of the visit, today January 7, 2021, the Petitioner has felt deterred or discouraged from visiting the Property because she is aware of the illegal barriers that limit and interfere with her access to the Property. The Petitioner knows it would be futile and useless to face these barriers because facing them means submitting to a humiliating, discriminatory and dangerous situation. All the barriers described here are directly related to the disability of the Petitioner and interfere her complete and equal access.

16.    Based on her personal observations, and based on her experience as a person with limitations who has seen hundreds of accessible and non-accessible places throughout her life, the Petitioner affirmatively alleges that the following architectural barriers related to her disability

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

exist in the Property:

<u>Access from outside of the Property:</u>
<u>Parking, Access Route and Entrance</u>

a)  Regarding parking spaces, there is not the required number of accessible parking spaces. ADAAG 1991 § 4.1.2; ADAAG 2010 §208.2. Possible solutions: reconfigure the parking by using paint.

b)  The parking does not receive adequate maintenance to be maintained in "operable condition" in violation to 28 C.F.R. § 36.211(a). For example, the maintenance in the parking area has been poor, inconsistent and in breach of applicable regulations.

c)  Regarding parking spaces, the requirement that at least one parking space has the technical specifications and dimensions of the "van"[4] category is not met.  ADAAG 1991 § 4.1.2 (b); ADAAG 2010 § 208.2. Also, the requirement of a sixth part of the accessible parking spaces having the dimensions of "van" category is not met. Id. Possible solutions: reconfigure the parking by using paint.

d)  The configuration and dimensions of the parking spaces is substantially inconsistent with the regulatory requirements applicable. ADAAG 2010 § 502.2, 502.3. Possible solutions: reconfigure the parking by using paint.

e)  The configuration and dimensions of the spaces adjacent to the parking spaces is substantially inconsistent with the requirements of appliable regulations. ADAAG 2010 §502.2, §502.3, §503.3.3. Possible solutions: reconfigure the parking by using paint.

f)  The slope in the parking spaces and the spaces adjacent to the parking spaces is inconsistent with the requirements of the applicable regulations because its inclination is greater than

---

[4] ADAAG or state laws do not require that a disabled person has a van or truck to park in those spaces classified by the ADAAG as "van". There has to be, and a disabled person is entitled to use, all accessible parking spaces required by ADAAG.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

1:48 in all directions. ADAAG 2010 § 502.4. Possible solutions: level the surfaces; relocate parking spaces in compliance with the guidelines for the location of accessible parking spaces.

g) The spaces adjacent to the parking spaces do not connect with an accessible route. ADAAG 2010 §502.3. Possible solutions: reconfigure the parking spaces in such a way that the access aisle connects to the accessible route.

h) Not all parking spaces are identified with the international accessibility symbol. ADAAG 2010 §502.3. Possible solutions: place all regulatory signage in all accessible parking spaces. The signs must be at the height and position required by regulation.

i) The positioning of the signs of the parking spaces is substantially inconsistent with applicable regulation. ADAAG 2010 §502.6. Possible solutions: place the sign at the height and in the position required by regulation.

j) No parking has the "van" sign required by the applicable regulation. ADAAG 2010 §502.6. Possible solutions: place the signs in all accessible parking spaces and at the height and position required by regulation.

k) The accessible parking spaces are not located in the route that is closest to the accessible entrance. ADAAG 2010 § 502.6. Possible solution: reposition the parking spaces. The Respondent will allege there are accessible parking spaces (for disabled persons), but they are not correctly located. Also, as mentioned, the configuration of the existent parking spaces does not meet the applicable regulation.

l) The access route towards the entrance accessible from the parking spaces is not firm, stable and can be unreasonably slippery. ADAAG 2010 § 302.1. Possible solutions: repair unleveled pavement, repair protrusions and holes, replace the existing surface with asphalt

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

or other material.

m) In the access route toward the accessible entrance there are ramps which slope is very inclined in a way that is substantially inconsistent with the applicable regulation. ADAAG 1991 §§ 4.8.1, 4.8.2; ADAAG 2010 §§403.3 ("cross slope" and "running slope"). Possible solution: reconfigure so that the slope is 1:20.

n) In the parking there are curb ramps which configuration and dimensions are substantially inconsistent with the requirements of applicable regulation. ADAAG 1991 §§4.7.1, 4.7.2, 4.7.2.3, 4.7.4, 4.7.5, 4.7.6., 4.7.9, 4.7.10; ADAAG 2010§§ 402.2, 406.1, 405.2, 406.1, 405.3, 405.5, 406.4, 406.3). Possible solutions: modify the ramp to adjust it to the requirements of regulation.

<u>Access Inside the Property: Access to Goods and Services</u>

o) There is a checkout aisle and counter, but the dimensions and spaces are substantially inconsistent with the applicable regulation. ADAAG 2010 §7.3; ADAAG 2010 §§ 904.3.1 (payment aisle of 36"), 904.3.2 (surface not higher than 38"), 216.11 (there is more than one checkout aisle but there is no aisle labeled with the international accessibility symbol). Possible solutions: expand the width of the aisle and modify the size of the checkout counter.

p) There are sales and services counters, but the configuration and dimensions are substantially inconsistent with the applicable regulation. ADAAG 1991 §7.2 ADAAG 2010 §§904.3.1 (require that there is a portion of the counter that is 36" in height and 36" wide), 904.4 (require that the accessible part of the counter is the same depth than the non-accessible part), 904.4, 904.1 (require a minimum space for parallel or horizontal approximation to the counter), 306.2.2, 306.2.4, 306.3.1 (require a space below the counter

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

when the design of the counter is for frontal approximation). Possible solutions lower a section of the counter, expand a section of the counter, replace the counter, extend the depth of the counter, reconfigure the spaces to allow parallel or frontal approximation, reconfigure counter to provide the space required below the counter in cases of design for frontal approximation.

<u>Access to the Property's Restroom</u>

q) As to the toilet area, the space provided around the toilet is substantially inconsistent with the applicable regulation. ADAAG 1991 §4.22, ADAAG 2010 §604.3.1, 604.8.1.1. Possible solutions: expand the restroom; move objects to expand space).

r) As to the grab bar around the toilet, both the side grab bar as the rear grab bar of the toilet, the existing configuration in the wall to the side and behind the toilet is substantially inconsistent with the regulations applicable to grab bars. ADAAG 2010 §§ 604.5.1, 609.4, 609.3, 604.5.2, 609.4, 609.6. Possible solutions: place and position the grab bars in the manner that is consistent to the cited regulations.

17.     The barriers identified in the preceding paragraph are only those that the Petitioner knows based on her personal experiences as consumer and neighbor of the place or information received that was generated as part of an investigation of certain elements of the property to avoid the Petitioner being exposed to unnecessary risks or to a potentially hazardous discriminatory condition or for being technical elements. Part of that investigation has been due to the efforts of the Defender of Disabled Persons, who went to the Property because of the initiatives of the Petitioner. The allegations contained herein are also based in the experience and common sense of the Petitioner as a disabled person, not based on scientific or expert tests.

18.     The totality of the barriers in the Property, including those discovered and others

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

undiscovered now are the cause of the legal damage of the Petitioner, namely, lack of full, free, and spontaneous access to the Property. Therefore, it is the intention of the Petitioner to use the discovery mechanisms to seek, identify and point out all those architectural barriers related to the Petitioner's disability so that the access to the Property is complete and equal. After the barriers are identified, the Petitioner purports to request the court to amend the pleadings to conform them to the evidence discovered about violations to the ADAAG that are now unknown.

19.     The Petitioner has been discouraged, and presently feels unmotivated, from visiting the Property because the Petitioner knows that the goods, services, accommodations, privileges, advantages, and facilities of the Property cannot be accessed without the Petitioner being submitted again to discrimination. The Petitioner knows the goods and services offered in the Property and will return to the Property once the barriers and eliminated.

20.     The Respondent knew, or must have known, that the Property was and is not accessible; that the conditions of the Property violate federal law and interfere (or deny) access to the disabled persons. Also, the Respondent has the financial resources to eliminate those barriers of the Property (without much difficulty or expense) and make the Property accessible to Petitioner. So far, however, the Respondent refuses to eliminate these barriers.

21.     The Respondent has had and enjoyed sufficient control and authority to modify the Property to eliminate barriers and comply with the applicable federal regulation. The Respondent has not eliminated such barriers and has not modified the Property to comply with the applicable accessibility standards. The Respondent, intentionally, has maintained the Property in its current condition and has intentionally abstained from altering the Property to meet the accessibility standards.

22.     The Petitioner affirmatively alleges that the continuous presence of barriers in the

Property is so obvious and open that establishes the discriminatory intention of the Respondent. The nature of the deviations of the federal standards does not suggest noncompliance with the regulation due to mere negligence or human error. The existent noncompliance is so substantial that it is obvious for a casual observer of average intelligence with no expertise on the accessible design standards or that does not have expertise with architectural barriers for not being disabled. Based on this the Petitioner believes, and therefore affirmatively alleges, that the discriminatory intention includes the conscious and pondered refusal of not adhering to the relevant construction norms; the contempt towards the construction plans and permits issued for the Property; the conscious decision to maintain the architectural design (as it exists currently) in the Property; the decision to not eliminate the architectural barriers and keep them in noncompliance for reasons of profit. It is affirmatively alleged that the Respondent has wanted to maintain an unfair competition with its competitors by not investing the money in complying with the federal mandate despite that its competitors have had to invest in compliance, which affects the other economic actors. The architectural barriers in the Property are not isolated interruptions (or temporary) of access for maintenance or repairs.

23.    Based in the historic noncompliance with ADAAG of the Respondent, the Petitioner believes, and therefore alleges, that the Respondent does not have internal policies, procedures, or documents regarding efforts of compliance with ADA in the Property.

## CAUSE OF ACTION
### American with Disabilities Act of 1990

24. The Petitioner incorporates the allegations contained in the preceding paragraphs.

25.  Title III of ADA essentially provides that no individual shall be treated differently due to disability in the full and equal enjoyment (or use) of goods, services, installations, privileges,

and accommodations offered by any person whether, owner, landlord, tenant, or operator of a place of public accommodation. 42 U.S.C. §12182(a).

26.   The Respondent discriminated against the Petitioner by refusing an enjoyment and full and equal access to the goods, services, privileges, and accommodations of the Property during each visit and each occasion that Petitioner decided not to visit the place.

27.   The ADA law establishes different standards depending on when the physical structure was built and if the installation has been altered since January 26, 1992. 28 CFR §§36.401, 36.402.  The properties "existent" before January 26, 1992 have to eliminate the barriers of access of the disabled persons when the elimination is "easily achievable". 42 U.S.C. §12182(b)(2)(A)(iv); 28 CFR §36.304. Structures designed and built to be occupied for the first time after January 26, 1993 must be accessible for persons with disabilities unless the entity can prove it is "structurally impracticable". 42 USC§ 12183(a). Finally, the alterations after January 26, 1992 must be done to guarantee that, to the "greatest extent possible" the altered portions of the installations are accessible. 28 CFR §§36.402(a)(1).

28.   The design standards, ADAAG, were published for the first time in 1991 and are codified in 28 CFR Part 36, Appendix A ("ADAAG of 1991"). The most recent ADA design standards were published for the first time in 2010 and were codified in 28 CFR Part 36, Subpart D (the ADAAG of 2010). Both norms are available in www.ada.gov. All the new constructions and modifications begun on March 15, 2012 or after must comply with ADAAG of 2010.

29.   The Petitioner believes that the Property was designed to be occupied for the first time after January 26, 1993. See 28 CFR §36.401.

30.   The Petitioner believes that the Property is in a place that was built after January 26, 1993. See 28 CFR §36.401.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

31.     The Petitioner believes that the Property was "altered after January 26, 1993. The term "altered" or alterations" includes, but is not limited to, remodeling, renovation, rehabilitation, historic restoring, changes or reordering in structural parts or elements, changes or reordering in the configuration of walls and changes in counters, tables or objects inside the Property.

32.     Alternatively, if the Property was not designed and built to be occupied for the first time after January 26, 1993, the Property is an existent installation in which case there is an obligation to eliminate architectural barriers that affect persons with disabilities insomuch that the elimination is "easily achievable". 42 USC §12182(b)(2). The ADA establishes that when evaluating if the elimination of barriers is "easily achievable", the factors to consider include the "resources" of the installation, 42 USC § 12181 (9)(b), that includes "the general financial resources of any parent company or entity", 28 CFR §36.104. If the Respondent holds that it does not have the financial resources as an affirmative defense to excuse its noncompliance, the Petitioner does not accept such excuses and purports to use the discovery mechanisms pursuant to 28 C.F.R. § 36.104.

## NOT ELIMINATING THE BARRIERS IN AN EXISTING INSTALLATION

33.     The ADA specifically forbids not eliminating architectural barriers in the existing installations when such elimination is easily achievable. 42 USC § 12182 (b)(2) (A) (iv); 28 C.F.R. § 36.104.

34.     When an entity can show that the elimination of a barrier cannot be easily achieved, that entity must make sure that the goods, services, privileges and accommodations are made available by alternate mechanisms, if these methods are easily achievable. §12182 (b)(2)(A)(v).

35.     Here, the Petitioner alleges that the Respondent can easily eliminate the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

architectural barriers in the Property without much difficulty or expense, and that the Respondent violates the ADA law by not eliminating these barriers when it easily could and can do so.

36.     In the alternative, if it is not "easily achievable" for the Respondent to eliminate the architectural barriers, the Respondent violated the ADA by not making its services available through alternate methods that were easily achievable.

### NOT DESIGNING AND BUILDING AN ACCESSIBLE INSTALLATION

37.     The Property was designed and built (or both) after January 26, 1992-activating the access requirements under Title III of the ADA and the regulation promulgated by the Justice Department of the United States.

38.     The Respondent violated ADA law by designing and building (or both) the Property in a way that it was not easily accessible for the public with disabilities, including the Petitioner, when doing so was structurally practical.

### NOT MAKING AN ALTERED INSTALLATION ACCESSIBLE

39.     The Petitioner believes, and therefore affirmatively alleges, that the Property has been altered (as the term "alteration" is defined by §§202.1, §202.3, 202.4) after January 26, 1992. 28 CFR §36.403; 49 CFT §37.43.

40.     The ADA also requires that the installations be altered in a way that is easily accessible for the persons with disabilities in the maximum way possible. 42 U.S.C.§12183(a)(2).

41.     The Respondent altered the Property in a way that violated the ADA and made it not easily accessible to the public with disabilities including the Petitioner.

### POLICIES AND PROCEDURES

42.     The ADA also requires making reasonable modifications in the policies, practices,

or procedures, when it is necessary to give equal access to the services, goods, privileges or accommodations to people with disabilities, unless that the entity can show that making such modifications would fundamentally alter their nature. 42 USC §12182 (b)(2)(A)(ii).

43.    Here, the Respondent violated the ADA law by not making reasonable modifications in its policies, practices, or procedures in the Property, when these modifications are necessary to allow (without fundamentally altering the nature of the place of public accommodation) equal access to the goods, services, installations, or accommodations.

44.    The Petitioner seeks every remedy available under the ADA (namely, permanent injunction, attorney's fees, costs, and legal expenses) for these violations mentioned. 42 USC §12205.

45.    The Petitioner alleges that the lack of the elimination of barriers has been knowingly, voluntary, and intentional because:

i.    The barriers described here are clearly visible and tend to be obvious even to a casual observer;

ii.    The barriers were previously pointed out by the Defender of Disabled Persons but what the agency pointed out was not done;

iii.    The Respondent has never acknowledged that compliance with ADA is not a one-time effort but a *continuous* obligation. They have refused to eliminate barriers or create alternatives to provide access;

iv.    The Respondent is owner, landlord, tenant and/or operator of the Property and as such has control over its day-to-day conditions. The Respondent has had the financial means and capacity to perform the remedies necessary to the access barriers but that has never interested them.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

v.  The places of public accommodation have the obligation to be accessible. There is a consequence if they are not: be the object of a civil proceeding, initiated by either the federal or state government or a private person. The Respondent decided not to be proactive and provide access motu proprio. The Respondent adopted an attitude that can be described as "let's wait, do nothing, we'll solve if something happens". The ADA was signed on July 26, 1990, by the then President George H.W. Bush after it was approved by bipartisan consent. The Respondent has no excuse to have evaded its legal obligations and, the ignorance of the law does not excuse its consequences and compliance.

vi.  The Respondent ignores the experiences of persons with disabilities who cannot buy, make personal business transactions, visit the doctor, or enjoy themselves like the rest of the persons. There are many places in all of Puerto Rico, like in the Property of the Respondent, that have ignored the reasonable requirements of the ADA. The ADA has the capacity of making the difference between the daily participation and exclusion.

vii.  The Respondent also ignores its own experiences in other places of public accommodation. That is, the Respondent has seen that in other places there are accessible parking spaces, accessible parking, accessible counters, and many other elements more in compliance, therefore it had and has knowledge of which accesses must be given to persons with disabilities.

viii.  The Respondent knows that the state and municipal administrative permits do not equal compliance with the applicable accessibility laws. The Petitioner believes, and therefore some, some of the municipal and state permits that the Respondent

has, to operate its place of public accommodation, expressly state that the permit to operate the business does not equate a certificate of compliance with the ADA law.

ix.   It is believed, therefore alleged, that there are certifications by architects, engineers, contractors, agents, and employees of the government that certified against reality (potentially fraudulently, subject to investigation and discovery) that the property complied with the regulation of the ADA with the purpose of designing, building, altering, or operating the Property in controversy in violation of federal regulation. The Respondent cannot take refuge in its own improper acts or of third parties to justify the continuous operation of a place of public accommodation that violates the applicable federal regulations.

x.   The Respondent does not have the obligation to give written notice of lack of accessibility. No other civil rights law allows the businesses and places of public accommodation to discriminate with no consequence until the discrimination victims notify the business that a law has been violated. If it were a requirement to "notify" the person that violates the civil rights, the places of public accommodation would not be proactive in the elimination of the architectural barriers. In their place, many would assume an attitude of "I better wait and solve if someone says <u>and proves</u> that they gave me notice of what is obvious is wrong". The ADA does not place the burden of acting in the persons with disability that the law seeks to protect; the duty to be proactive is of the place of public accommodation. If it were a requirement to give notices to the establishment, the cost of giving notice and proving that notice was given will be of the person with

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

disabilities, who usually already has limited financial capacity. For example, a written notice by a lay person would probably result in extensive litigation and controversy of fact of whether this notice was really given to a person with authority (like with a summons), if it was sent by mail to the correct address (in the context where many businesses operate informally and without mailing addresses) or controversies about whether the document was truly sent (forcing the disabled person to assume the cost of sending letters by certified mail) or unending controversies about whether the notice was sufficient, specific or complete. The disabled persons find multiple barriers daily or do not go to places because they know they are not accessible (contrary to a person that does not have car accidents every day), so that the disabled persons, under the giving "notices" point of view would have to invest a lot of money in sending a letter by certified mail or delivering by hand these notices to a person with authority. Requiring notices would prevent the court from concentrating in the substance of the federal mandate, accessibility and would put procedural obstacles to the exercise of the rights.

xi.   Establishing and managing a business requires compliance with many laws and norms. This is the cost of doing business. Whoever decides to operate a place of public accommodation must comply with the applicable laws from day one. Whoever operates a place of public accommodation from day one excluding or limiting access to the disabled persons acts per their own actions. It is unthinkable to think to delay (by requiring "notices") or to eliminate the consequences for the small or big companies that do not pay taxes or do not meet the health and safety

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

codes. Violating the rights of the disabled person must not be treated differently. It is also unacceptable to request compliance to the "big" companies and not medium or small companies (or vice versa) or to require compliance depending on the place of incorporation of the company or depending on the national origin or race of the owners or shareholder of the company or entity.

xii.   There are great federal efforts to educate the business owners of their obligations with the ADA, including the detailed website of the Justice Department of the United States about compliance with ADA (ada.gov), the direct line of the Justice Department, materials of extensive technical assistance of the Justice Department and the ten ADA regional centers financed by the federal government that provide resources in depth and capacitation in all the states (adata.org). However, the Respondent has not made any significant and proactive effort to comply with the ADA.

46.    Based on the historic noncompliance and level of noncompliance it is believed that the Respondent has never recognized that the ADA accessibility standards are extremely important. They are not minor details or demanding rules but rather, are essential to guarantee true accessibility. A door that is too narrow can be the difference between accessing a business or not. A bathroom with a very small space can make the difference between using a bathroom or not. That said, it is important that to impose liability under ADA, the barrier does not need to completely exclude the Petitioner from entering or using the installation, it only needs to *interfere* with the full and equal enjoyment of the Petitioner. The ADAAG establishes technical standards required to have a "full and equal enjoyment". That is why, if a barrier violates the ADAAG and that barrier is related to the Petitioner's disability, the equal and complete access is reduced, which

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

constitutes discrimination under ADA.

47.     It is known that the persons with disabilities experience a loss of dignity, independence, personality, and pride associated with the segregation and lack of access to public lodgings. Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J.L. & Pub. Pol' y 58, 76, 85 (Fall 2010). The barriers to access and segregation create social stigma and undermines the feelings of self-esteem and independence of the persons with disabilities. Stacey Menzel Baker, Jonna Holland and Carol Kaufman-Scarborough, How Consumers with Disabilities Perceive "Welcome' in Retail Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007). The barriers also cause the persons with disabilities to have a negative general reaction to all the retail surroundings and experience fear and discomfort in this environment. Carol Kaufman-Scarboroigh, Reasonable Access for Mobility-Disabled Persons is More Than Widening the Door, 75 J. of Retailing 479, 483, 494 (1999). Also see, The Routledge Handbook of Designing Public Spaces for Young People: Processes, Practices and Policies for Youth Inclusion (2020) (discussing the concept of access to a substantially similar experience, beyond physical access, from a scientific perspective); Moreno Llopis, Beatriz. Architecture to the service of functional disability. Diss, 2020; Cruz, Vanessa Vianna, et al. "Accessibility barriers for people with disabilities or reduced mobility: an integrative review. "Research , Society and Development 9.4 (2020): 168943053; Carol Kaufman-Scarborough and Stacey Menzel Baker, Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005); Baker, Stacey Menzel, Jonna Holland, and Carol Kaufman-Scarborough. How consumers with disabilities perceive "welcome" in retail servicescapes: a critical incident study. Journal of Services Marketing (2007); Realm, Public. Experiential Accessibility. The inaccessibility in the web also constitutes one of

the great modern challenges. Cohen, Alex H., Jorge E. Fresneda, and Rolph E. Anderson. <u>What Retailers Need to Understand About Website Inaccessibility and Disabled Consumers: Challenges and Opportunities</u>. Journal of Consumer Affairs.

48.     The Petitioner vehemently rejects arguments that enforcing the ADA privately is illegitimate. The law must be complied regardless that the place of public accommodation is a small, medium, or large entity. The ADA law does not allow some to discriminate and others not. The prohibition to discriminate is absolute and applies to all the same. There is no distinction for social, national origin, citizenship, or legal residence of who operates a place of public accommodation, either a person or entity. Complying with the physical accessibility standards of the ADA requires that the business owners take proactive measures and, frequently, incurring in costs. Unfortunately, in this case, neither the law or the possibility of a civil action (from the government or private) was incentive enough for a voluntary compliance. The ADA was not enough to convince Respondent to comply with the law and the objective of this Petition is to ensure that the mandate of law is finally complied with.

RELIEF

WHEREFORE, the Petitioner very respectfully requests the following legal remedies:

A.  A declaratory judgment providing that the Respondent has violated the requirements of Title III of ADA and the relevant regulations of implementation of ADA; and that the Property is not completely accessible and usable independently for persons with limited mobility such as Petitioner;

B.  A permanent injunction pursuant to 42 USC § 12188 (a)(2) and 28 CFR §36.504 (a) to order the Respondent to take all necessary steps to eliminate the architectural barriers described and for the installations to comply with the requirements established in the ADA

and its implementation regulations, so that its installations are totally accessible to, and independently by persons with limited mobility, and that also the court orders it will retain jurisdiction for a period to supervise that the Respondent complies with the relevant requirements of the ADA and to ensure that the Respondent has adopted and follows a institutional policy that makes Respondent remain in total compliance with the law;

C.  In case that the Respondent continues its discriminatory condition, it is requested that pursuant to 42 USC §12188 (a) (2) and 28 CFR§36.504 to order the closing and shut down of the Property as a measure to stop the discriminatory condition until the Respondent has duly certified to the satisfaction of the court that the discrimination has been eliminated;

D.   Payment of the costs of the action and litigation expenses, pursuant to 42 USC § 12205;

E.  Payment of reasonable attorney's fees *not* under the Rules of Civil Procedure of Puerto Rico, but in accordance with what is provided in 42 U.S.C. § 12205 and 28 CFR §36,505 and its binding interpretative case law and;

F.  The provision of any other remedy that is fair and appropriate.


RESPECTFULLY SUBMITTED.

Today January 7, 2021.

s/José Carlos Vélez Colón
JOSÉ CARLOS VÉLEZ COLÓN
RUA NO; 18913
JVELEZ@VELEZLAWGROUP.COM

421 MUNOZ RIVERA AVE #205
SAN JUAN, PR 00918

TEL: (787)599-9003
FAX: N/A

Attorney for Petitioner

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION HU2021CV00012 01/07/2021 04:19:41 p.m. Docket No. 2 Page 1 of 1

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
HUMACAO SUPERIOR PART

| | |
|---|---|
| ELIZABETH ROSARIO AMARO | CIVIL NO: HU2021CV00012 |
| Petitioner | RE: |
| vs. | PETITION FOR ORDER |
| AGORI INC. | |
| Respondent | |

**MOTION REQUESTING ISSUANCE OF SUMMONSES**

TO THE HONORABLE COURT

 Comes now the petitioner, Elizabeth Rosario Amaro, through the undersigned legal counsel, and respectfully submits the proposed summons that is attached for its corresponding issuance.

RESPECTFULLY SUBMITTED.

Today January 7, 2021.

s/José Carlos Vélez Colón
JOSÉ CARLOS VÉLEZ COLÓN, ESQ.
RUA NO: 18913
JVELEZ@VELEZLAWGROUP.COM

421 MUNOZ RIVERA AVE. #205
SAN JUAN, PR 00918

TEL: (787) 599-9003
FAX: N/A

Attorney for Petitioner

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

HU2021CV00012 01/07/2021 04:19:41 p.m. Docket No. 2 Page 1 of 3
**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**HUMACAO SUPERIOR PART**

| | |
|---|---|
| ELIZABETH ROSARIO AMARO<br>Plaintiff<br><br>Vs.<br><br>AGORI, INC.<br><br>Defendant | **CIVIL NO: HU2021CV00012**<br><br>RE:  PETITION FOR ORDER |

**SUMMONS**

UNITED STATES OF AMERICA, SS
THE PRESIDENT OF THE UNITED STATES
THE COMMONWEALTH OF PUERTO RICO

**TO: AGORI, INC.**
UNKNOWN ADDRESS

YOU ARE HEREBY served so you file your responsive pleading with the court within 30 days of the execution of this summons, excluding the day of execution. You must file your responsive pleading through the Unified System of Case Management and Administration (SUMAC for its Spanish acronym) which you can access using the following electronic address: https://unired.ramajudicial.pr, unless represented *pro se* in which case you must file your responsive pleading in the Court's Clerks Office. If you do not file your responsive pleading within the referenced term, the court may enter judgment in default against you and grant the remedy requested in the complaint, or any other, if the court, in the exercise of its discretion, deems it appropriate.

Name of the Attorney: JOSÉ CARLOS VÉLEZ COLÓN
RUA: 18913
Address: 421 MUNOZ RIVERA AVE, PENTHOUSE #1009, SAN JUAN, PUERTO RICO, 00918-4015
Tel: 7875999003/Fax:
Email: JVELEZ@VELEZLAWGROUP.COM

Issued under my signature, and the seal of the Court, on _____ _____, _____ .

_____
Name of the Regional Secretary

By:   _____
Name and Signature of the Assistant Secretary

OAT 1721 Summons (SUMAC)
(Rev. May 2018)
Rules of Civil Procedure of 2009, as amended

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

HU2021CV00012 01/07/2021 04:19:41 p.m. Docket No. 2 Page 2 of 3

Case No: **HU2021CV00012**

## PROOF OF SERVICE BY MARSHAL

I, _____ Marshal of the Court of First Instance of Puerto Rico,_____ Part.

CERTIFY that the execution of this summons and the complaint in the captioned case was carried out by me on _____ _____, _____ at ___ a.m. ____ p.m., the following way:

__ Through personal delivery to defendant at the following physical address:

_____
_____

_Accessible in the immediate presence of defendant at the following physical address:

_____

_ Leaving copy of the documents to an authorized agent of the defendant or appointed by law to received summonses at the following physical address:

_____

__ Could not be personally executed because

_____
_____

In _____, Puerto Rico, on _____ ____, _____.

_____          _____
Name of Regional Marshal                  Name of the Marshal of Court of
                                          First Instance and Badge Number

_____

EXECUTION BY AN INDIVIDUAL PERSON

I, _____ declare to have the legal capacity pursuant to Rule 4.3 of Civil Procedure of Puerto Rico, and certify that the execution of the summons and the complaint in the captioned case was carried out by me, on _____ _____, _____, the following way:

__ Through personal delivery to defendant at the following physical address:

_____
_____

_Accessible in the immediate presence of defendant at the following physical address:

_____

OAT 1721 Summons (SUMAC)
(Rev. May 2018)
Rules of Civil Procedure of 2009, as amended

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

HU2021CV00012 01/07/2021 04:19:41 p.m. Docket No. 2 Page 3 of 3

_ Leaving copy of the documents to an authorized agent of the defendant or appointed by law to received summonses at the following physical address:

_____

__ Could not be personally executed because

_____
_____

_____

## COSTS OF THE EXECUTION

$_____

## STATEMENT BY THE PROCESS SERVER

I declare under penalty of perjury, pursuant to the laws of the Commonwealth of Puerto Rico that the information provided in the execution of the summons is true and correct.

WHEREFORE, I sign this in _____, Puerto Rico today _____ _____.

_____         _____
(signature of the process server)              Address of the process server


AFFIDAVIT _____ [in case of being sworn before a notary]
Sworn and signed before me by _____ of the above personal information whom I attest to know
_____
(personally know or if not, certify the supplemental method provided by the Notary Law.)

In _____, Puerto Rico on _____ _____, _____.


_____

Name of the Notary or Regional Secretary


By: _____
     Name and Signature of the
     Assistant Secretary of the Court


OAT 1721 Summons (SUMAC)
(Rev. May 2018)
Rules of Civil Procedure of 2009, as amended

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**HUMACAO SUPERIOR PART**

ELIZABETH ROSARIO AMARO

Plaintiff

Vs.

AGORI, INC.

Defendant

**CIVIL NO: HU2021CV00012**

RE:  PETITION FOR ORDER

Courtroom 206

**SUMMONS**

UNITED STATES OF AMERICA, SS
THE PRESIDENT OF THE UNITED STATES
THE COMMONWEALTH OF PUERTO RICO

**TO: AGORI, INC.**
UNKNOWN ADDRESS

YOU ARE HEREBY served so you file your responsive pleading with the court within 30 days of the execution of this summons, excluding the day of execution. You must file your responsive pleading through the Unified System of Case Management and Administration (SUMAC for its Spanish acronym) which you can access using the following electronic address: https://unired.ramajudicial.pr, unless represented *pro se* in which case you must file your responsive pleading in the Court's Clerks Office. If you do not file your responsive pleading within the referenced term, the court may enter judgment in default against you and grant the remedy requested in the complaint, or any other, if the court, in the exercise of its discretion, deems it appropriate.

Name of the Attorney: JOSÉ CARLOS VÉLEZ COLÓN
RUA: 18913
Address: 421 MUNOZ RIVERA AVE, PENTHOUSE #1009, SAN JUAN, PUERTO RICO, 00918-4015
Tel: 7875999003/Fax:
Email: JVELEZ@VELEZLAWGROUP.COM

Issued under my signature, and the seal of the Court, on January 8, 2021

Dominga Gomez Fuster
Regional Secretary
Name of the Regional Secretary

By:      NANCY DE JESUS [signed]
Assistant Secretary
Name and Signature of the Assistant Secretary

OAT 1721 Summons (SUMAC)
(Rev. May 2018)
Rules of Civil Procedure of 2009, as amended

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Page 1 of 3

Case No: **HU2021CV00012**

## PROOF OF SERVICE BY MARSHAL

I, _____, Marshal of the Court of First Instance of Puerto Rico, _____ Part.

CERTIFY that the execution of this summons and the complaint in the captioned case was carried out by me on _____ _____, _____ at ___ a.m. ____ p.m., the following way:

__ Through personal delivery to defendant at the following physical address:

_____
_____

_Accessible in the immediate presence of defendant at the following physical address:

_____

_ Leaving copy of the documents to an authorized agent of the defendant or appointed by law to received summonses at the following physical address:

_____

__ Could not be personally executed because

_____
_____

In _____, Puerto Rico, on _____ ____, _____.


_____          _____
Name of Regional Marshal                          Name of the Marshal of Court of
                                                              First Instance and Badge Number


## EXECUTION BY AN INDIVIDUAL PERSON

I, _____ declare to have the legal capacity pursuant to Rule 4.3 of Civil Procedure of Puerto Rico, and certify that the execution of the summons and the complaint in the captioned case was carried out by me, on _____ ____ _____, the following way:

__ Through personal delivery to defendant at the following physical address:

_____
_____

_ Accessible in the immediate presence of defendant at the following physical address:

_____

___ Leaving copy of the documents to an authorized agent of the defendant or appointed by law to received summonses at the following physical address:

_____

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

__ Could not be personally executed because

_____

_____

_____

## COSTS OF THE EXECUTION

$_____

_____

## STATEMENT BY THE PROCESS SERVER

I declare under penalty of perjury, pursuant to the laws of the Commonwealth of Puerto Rico that the information provided in the execution of the summons is true and correct.

WHEREFORE, I sign this in _____, Puerto Rico on _____ ___, ____.

_____                                    _____

(signature of the process server)                    Address of the process server

AFFIDAVIT _____ [in case of being sworn before a notary]
Sworn and signed before me by _____ of the above personal information whom I attest to know

_____

(personally know or if not, certify the supplemental method provided by the Notary Law.)

In _____, Puerto Rico on _____ _____, _____.

_____

Name of the Notary or Regional Secretary

By: _____

Name and Signature of the
Assistant Secretary of the Court

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION



**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF LAW**
**COURT OF FIRST INSTANCE**
**HUMACAO SUPERIOR DIVISION**

| | |
|---|---|
| ELIZABETH ROSARIO-AMARO<br>Plaintiff<br><br>VS<br>AGORI, INC.<br>Defendant | CASE NO. HU2021CV00012<br><br>RE:   PETITION FOR ORDER<br><br>Courtroom 206 |

### SUMMONS

UNITED STATES OF. AMERICA, SS
THE PRESIDENT OF THE UNITED STATES
THE COMMONWEALTH OF PUERTO RICO

**TO: AGORI, INC.**
ADDRESS UNKNOWN

YOU ARE HEREBY summoned to file with the court your responsive allegation within 30 days of the service of this summons, excluding the day of service. You must file your responsive allegation through the Unified Case Management and Administration System (acronym in Spanish, SUMAC), which you may access using the following address: https://unired.ramajudicial.pr, unless you will appear pro se, in which case you shall file your responsive allegation with the clerk of the court. If you fail to file your responsive allegation within such term, the court may enter default judgment against you and grant the relief sought in the complaint, or any other, if the court in the sound exercise of its discretion deems that such is warranted.

Name of Attorney: JOSE CARLOS VÉLEZ-COLÓN
Sole Registry of Attorneys: 18913
Address: 421 AVE MUNOZ RIVERA, PENTHOUSE #1009, SAN JUAN, PUERTO RICO, 00918-4015
Tel: 7875999003 / Fax:
Email: JVELEZ@VELEZLAWGROUP.COM

I have set my hand and the seal of the Court hereto on January 8, 2021.

[illegible stamp]

Name of  Regional Clerk  .,

By:   **NANCY DE JESUS** [/S/]

Deputy Clerk

_____

Name and Signature of the
Deputy Clerk of the Court

[Illegible seal, 

OAT 1721 Summons (SUMAC)
Rev. May 2018
Rules of Civil Procedure  2009, as amended

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

HU2021CV00012 07/JAN/2021  04:19:41 Entry No. 2 Page 2 of 2

Case No.   **HU2021CV00012**

## CERTIFICATION OF SERVICE OF PROCESS BY BAILIFF

I _____Bailiff of the Court of First Instance of Puerto Rico, _____Division
CERTIFY that I served process in the above-captioned case on _____at  ☐ am  ☐ pm
In the following manner:

☐ By personal delivery to the defendant at the following street address:

_____ :

☐ Accessible in the immediate presence of the defendant at the following street address:_____

_____

☐  By leaving a copy of the documents with an agent authorized by the defendant or designated by such
to receive service at the following street address:_____

_____

It was not possible to serve process personally because: _____

_____

In_____, Puerto Rico, on_____

_____

| Name of the Regional Bailiff | Name of the Bailiff of the Court of First Instance and Badge Number |
|---|---|
| | Signature of the Bailiff of the Court of First Instance |

## SERVICE BY PRIVATE PARTY

I Bethmany Vázquez-Ramos_____ state that I have the legal capacity as provided in Rule  4.3 of the Rules
of Civil Procedure of Puerto Rico, and I certify that I served process and the complaint in the above-
captioned case on January 18, 2021 in the following manner:

☐ By personal delivery to the defendant at the following street address:

_____ :

☐ Accessible in the immediate presence of the defendant at the following street address:_____

☒ By leaving a copy of the documents with an agent authorized by the defendant or designated by such
to receive service at the following street address(#47 Georgetti Comerio PR 00782) Hwy. 31 Km. 3.3 Int. Calle
Juan M. Barzot Naguabo PR 00718 c/o Juan Agosto-Aponte in his capacity as President of Agori, Inc, d/b/a Naguabo
Supermercado Econo 10: 38 am

It was not possible to serve process personally because: _____

_____

## COST OF SERVICE

$65.00

## STATEMENT OF PROCESS SERVER

I, Bethmany Vázquez-Ramos state under penalty of perjury, pursuant to the laws of the Commonwealth of Puerto
Rico, that the information provided in the service of process is true and correct.
IN WITNESS WHEREOF, I sign this in_____ Guayama, Puerto Rico, on January 19, 2021 .

| /s/ | PO Box 975 |
|---|---|
| Signature of the Process Server | Guayama PR  00785 |
| | Address of the Process Server |

AFFIDAVIT NO. _[if sworn to before a notary [attorney]
Sworn to and signed before me by  Bethmany Vázquez-Ramos whose personal circumstances are those as stated
above, who I witness I know
_____Driver's license #2530961_____
(personal acquaintance or otherwise supplementary accreditation as provided in the Notarial Act)
In _____Guayama  Puerto Rico, this   19th day of January 2021.

[Stamped: MARISOL ROSADO RODRIGUEZ Clerk]
Name of the Notary [attorney] or
Regional Clerk

By: [Stamped:  Daisy Rodríguez-Luna, initials
Name and Signature
of the Deputy Clerk of the Court

OAT 1721 Summons (SUMAC)                                                               Page 2 of 2
Rev. May 2018
Rules of Civil Procedure  2009, as amended
[Seal of the Commonwealth of Puerto Rico, General Court of Justice, Court of First Instance Guayama Superior Division, Initials and
G037;  Internal Revenue Stamp for $5.00]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and
accurate translation, to the best of my abilities, of the document in Spanish which I have
seen.

CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF LAW**
**COURT OF FIRST INSTANCE**
**Humacao JUDICIAL CENTER**
Humacao SUPERIOR DIVISION

| ELIZABETH ROSARIO-AMARO | CASE NO. | HU2021CV00012 |
|---|---|---|

VS

| AGORI, INC. | RE: | PETITION FOR ORDER |
|---|---|---|

**NOTIFICATION BY CLERK**

A: JOSE CARLOS VÉLEZ-COLÓN
JVELEZ@VELEZLAWGROUP.COM

With regard to the above-captioned case, the undersigned Clerk notifies you of the following:

THE DOCUMENT THAT WAS FILED DOES NOT COMPLY WITH THE ADMINISTRATIVE GUIDELINES AND ORDERS FOR THE ELECTRONIC FILING OF DOCUMENTS THROUGH SUMAC. ON FUTURE OCCASIONS YOU SHALL ASCERTAIN THE FOLLOWING: FOR FUTURE OCCASIONS: ALL ATTACHMENTS SHALL BE FILED ELECTRONICALLY AND BE ACCOMPANIED WITH A MAIN MOTION OR BRIEF. EACH ATTACHMENT SHALL BE FILED SEPARATELY AND IDENTIFIED WITH THE RESPECTIVE NUMBER. ADMINISTRATIVE GUIDELINES SUMAC VIII - ATTORNEY. JUDICIAL BRANCH PORTAL.

In Humacao, Puerto Rico, this 03rd day of February 2021.

| DOMINGA GOMEZ-FUSTER | By: | s/ADELAIDA SILVA-FIGUEROA |
|---|---|---|
| Name of the Regional Clerk | | Name and Signature of the Deputy Clerk of the Court |

Form for Notification by Clerk
SUMAC

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF LAW**
**COURT OF FIRST INSTANCE**
**Humacao JUDICIAL CENTER**
Humacao SUPERIOR DIVISION

| | | |
|---|---|---|
| ELIZABETH ROSARIO-AMARO | CASE NO. | HU2021CV00012 |
| VS | | |
| AGORI, INC. | RE: | PETITION FOR ORDER |

## NOTIFICATION BY CLERK

A:   JOSE CARLOS VÉLEZ-COLÓN
     JVELEZ@VELEZLAWGROUP.COM

With regard to the above-captioned case, the undersigned Clerk notifies
you of the following:

IN THE BRIEF      TITLE OF THE MOTION   DATED     ATTACHED _____
PROCESS SERVED:                    NAMES OF THE PERSONS SERVED          ,
WITH RECEIPT: THE INTERNAL REVENUE STAMP FOR $5.00 WAS NOT ATTACHED. IN
ORDER TO CONTINUE WITH THE PROCEEDINGS, THE SERVED DOCUMENTS MUST BE FILED
ALONG WITH A MOTION AND THE RESPECTIVE INTERNAL REVENUE STAMP ($5.00).

In Humacao, Puerto Rico, this 03rd day of February 2021.

| | |
|---|---|
| DOMINGA GOMEZ-FUSTER | By:   s/ADELAIDA SILVA-FIGUEROA |
| Name of the Regional Clerk | Name and Signature of the |
| | Deputy Clerk of the Court |

For Notification by Clerk
SUMAC



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and
accurate translation, to the best of my abilities, of the document in Spanish which I have
seen.